## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WIDE EYES MARKETING LTD., | ) | Civil Action No. _____ |
| Plaintiff, | ) | **JURY TRIAL DEMANDED** |
| v. | ) | |
| AQUA LEISURE INDUSTRIES, INC. and TOYS "R" US, INC., | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Wide Eyes Marketing Ltd. ("Wide Eyes") complains against Aqua Leisure Industries, Inc. ("Aqua Leisure") and Toys "R" Us, Inc. ("Toys "R" Us") as follows:

## NATURE OF THIS ACTION

1.  This is an action for patent infringement against Aqua Leisure and Toys "R" Us based on their manufacture, use, offers for sale, and/or sale of three-dimensional ("3-D") swim goggles and other 3-D pool, water, and outdoor toys falling within one or more claims of a Wide Eyes patent. Wide Eyes seeks, *inter alia*, injunctive relief and damages for acts of patent infringement in violation of United States patent law, 35 U.S.C. §§ 101 *et seq.* and other applicable law.

2.  This action is also for tortious interference with contractual and business relationships, breach of contract, and unfair and deceptive trade practices, all in violation of the laws of the Commonwealth of Massachusetts.

## PARTIES

3.Wide Eyes is a Canadian Limited Liability Company with a principal place of business at 323 Richmond Street East, Suite 907, Toronto, Ontario M5A 3R3, Canada.

4.Upon information and belief, Aqua Leisure is a Massachusetts Corporation with a principal place of business at 525 Bodwell Street, Avon, Massachusetts, 02322.

5.Upon information and belief, Toys "R" Us is a Delaware Corporation with a principal place of business at One Geoffrey Way, Wayne, New Jersey, 07470.

## JURISDICTION AND VENUE

6.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338, as these claims arise under the patent laws of the United States.

7.This Court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. The state law claims arise from or are substantially related to the same acts giving rise to the federal claims.

8.This Court has personal jurisdiction over Defendants pursuant to Massachusetts General Laws c. 223A § 3 because Aqua Leisure and Toys "R" Us do business in the Commonwealth of Massachusetts and the claims arise from Defendants' tortious acts in the Commonwealth of Massachusetts.

9.Venue is proper is this District pursuant to 28 U.S.C. § 1391(b) and (c) and § 1400(b). Defendants have committed and/or threatened to commit acts of infringement in this District, and this action arises from those acts. Defendants have regularly engaged in business in this State and District and purposefully avail themselves of the privilege of conducting business in this District, for example, by offering for sale and selling infringing articles in this District.

## FACTUAL BACKGROUND

### A. Wide Eyes' Patent and 3-D Toy Technologies

10. Wide Eyes designs, markets, and licenses to third party manufacturers a wide variety of toys, including 3-D goggles for use with various pool and water toys and other backyard games, as well as other 3-D toy products that can be used in conjunction with the 3-D goggles for 3-D viewing. Wide Eyes' products are marketed and sold throughout the United States and worldwide, including via the Internet, retail stores, and at industry trade shows.

11. Wide Eyes has been promoting and selling 3-D toy products for the past six (6) years, since 2005. In particular, Wide Eyes has promoted and sold a number of 3-D products, as well as other types of toys and games, to Toys "R" Us, including, for example, the "Banzai 3D Sharkbite Slide," "3D Toy Story Slide," and "Optrix 3D Bubble" line.

12. In or around April 2010, Wide Eyes originally approached Toys "R" Us to evolve Wide Eyes' business from its typical model of licensing its inventions under third parties' brand names and private labels to instead serve as a vendor and direct supplier to Toys "R" Us.

13. Wide Eyes was started by Peter Sgromo in 2005 following a prominent career in the toy and consumer products industry at such leading companies as Procter & Gamble, Crayola, Levi Strauss & Co., Pernot Ricard, HP (agency), and Wham-O. Under Mr. Sgromo's direction, Wide Eyes has provided leading toy companies such as Spin Master, Imperial Toys LLC, Sportcraft, RC2/Learning Curve, Klutz (Scholastic), and ToyQuest with product development consulting and new product ideas such as the "Banzai 3D Sharkbite Slide," "3D Toy Story Slide," "Optrix 3D-TIvities" line, and "Optrix 3D Bubble" line.

14. Wide Eyes owns a patent directed to various embodiments of these 3-D toy concepts, namely United States Patent No. 7,046,440 B1, which issued on May 16, 2006, entitled

"3-D Vision System For Swimming Pools" (the "'440 Patent"). A copy of the '440 Patent is attached to the Complaint as <u>Exhibit A</u>.

15.     The '440 Patent was assigned to Wide Eyes on or around December 20, 2010. Wide Eyes owns the entire right, title, and interest in and to the '440 Patent.

16.     The '440 Patent has not expired and is in full force and effect.

17.     Pursuant to 35 U.S.C. § 282, the '440 Patent and each of its claims are presumed valid.

        **B.**     **Wide Eyes' Business Dealings with Aqua Leisure and Toys "R" Us**

18.     On or around April 6, 2010, Wide Eyes' President, Peter A. Sgromo, met with Steve Arnold, a Seasonal Buyer for Toys "R" Us, to present various 3-D toy concepts conceived and developed by Wide Eyes. The products presented to Toys "R" Us at this meeting included 3-D goggles for use with various pool and water toys and other backyard games in addition to other toy concepts covered by the '440 Patent.

19.     During this meeting, Wide Eyes expressed to Toys "R" Us its desire to sell 3-D products directly to Toys "R" Us under one of Toys "R" Us' private labels. Toys "R" Us expressed its interest in working with Wide Eyes and selling its 3-D products. Mr. Arnold, however, suggested that Wide Eyes' 3-D products should be licensed to a third-party, namely Aqua Leisure.

20.     On April 8, 2010, Aqua Leisure's sales agent, Fred Fortier d/b/a/ Direct Connect Marketing, Inc., contacted Wide Eyes on behalf of Aqua Leisure to initiate discussions concerning a licensing arrangement among the parties whereby Wide Eyes would license its rights in its 3-D goggles and other 3-D products to Aqua Leisure, who would act as a direct vendor of those products to Toys "R" Us.

21. Upon information and belief, Mr. Fortier is a former Toys "R" Us executive during which time he acted as Mr. Arnold's boss.

22. Wide Eyes and Aqua Leisure executed an Idea Submission Agreement on or around April 9, 2010. Paragraph 5 of the Idea Submission Agreement states that, "If Aqua Leisure is interested in marketing your idea, it will enter into a contract with you provided on terms that if [*sic*] finds reasonable."

23. Pursuant to the Idea Submission Agreement, Wide Eyes discussed with Mr. Fortier Wide Eyes' 3-D product concepts, including kick boards, body boards, dive and retrieve pool toys and games, flying discs, balls, swim accessories and gear, swim boards, backyard games, lawn games, snow sleds and inflatables, and indoor games. During these discussions, Wide Eyes and Mr. Fortier also discussed creation of an "Aqua 3D" brand for Wide Eyes' 3-D products.

24. On June 22, 2010, Wide Eyes and Mr. Fortier executed a Reciprocal Non-Disclosure and Confidentiality Agreement. The Reciprocal Non-Disclosure and Confidentiality Agreement restricted, *inter alia*, Mr. Fortier's use and disclosure of information disclosed to Mr. Fortier by Wide Eyes.

25. On or around April 27, 2010, Wide Eyes and Mr. Fortier met with Aqua Leisure and at least six (6) senior Aqua Leisure team members at Aqua Leisure's Massachusetts offices to present Wide Eyes' 3-D product concepts and product samples. Aqua Leisure responded extremely favorably to Wide Eyes' presentation and initially expressed a great interest in Wide Eyes' 3-D products. Indeed, Aqua Leisure's reaction to Wide Eyes' product concepts and product samples was ecstatic, particularly with respect to Wide Eyes' holographic and Chromadepth technology. To illustrate how favorably Wide Eyes' products were received by

Aqua Leisure, toward the end of this meeting, Wide Eyes and Aqua Leisure began to discuss particular points toward a future formal business deal between the parties, including, for example, items such as minimum guarantees, advances, and royalties.

26. Following this meeting, Aqua Leisure retained copies of detailed descriptions of Wide Eyes' product samples. Aqua Leisure also retained actual product samples of Wide Eyes' 3-D holographic products (including swim goggles, jump ropes, pool toys, underwater surf boards, swim fins and gear, and dive toys), 3-D decoder technology (including swim goggles and dive toys), 3-D Chromadepth technology (including swim goggles, dive toys, play balls, boogie boards, skim boards, and kick boards), and other products (including a floating game board for the pool).

27. Wide Eyes again met with Aqua Leisure on May 17, 2010 at Aqua Leisure's Hong Kong showroom to discuss negotiation of the licensing agreement. At this point, Aqua Leisure decided to focus on the traditional 3-D concepts in the areas of water games and outdoor sports. By this point, Aqua Leisure was working with Mr. Sgromo and Wide Eyes' artist to develop the 3-D stereoscopic art for the products.

28. At the May 17, 2010 meeting, Wide Eyes and Aqua Leisure discussed at great length the details of Wide Eyes' different technologies, how those technologies worked, and issues involved in getting the products to the retail market.

29. However, after many months of negotiations, Aqua Leisure cut off further discussions about marketing Wide Eye's 3-D products. In a demonstration of bad faith, Aqua Leisure made a low-ball offer to Wide Eyes of a flat $5,000, less than the travel expenses Wide Eyes had incurred to date in pursuing a business deal with Aqua Leisure, and refused to discuss

realistic terms. Aqua Leisure never acquired a license from Wide Eyes for Wide Eyes' 3-D goggles and other 3-D products.

30.     Upon information and belief, after obtaining the detailed disclosures from Wide Eyes concerning Wide Eyes' 3-D goggles and other 3-D products as discussed above, Aqua Leisure decided to deal directly (and began dealing directly) with Toys "R" Us and cut Wide Eyes out of any negotiations and business dealings with Toys "R" Us.

### C.      Aqua Leisure's Sale of Wide Eyes' Patented Technology to Toys "R" Us

31.     Upon information and belief, Aqua Leisure manufactures, uses, offers to sell, and/or sells a variety of 3-D swim, water, and outdoor toys, including, but not limited to, "Aqua 3-D" goggles, "Jellyfish Toss 3D Spray Mat," "Sunflower 3D Sprinkler," "Tic Tac Toe 3D Toss Game," "Basketball 3D Game," and "Dash N' Splash 3D Water Slide" under its "Aqua 3-D" product line (collectively, Aqua Leisure's "Aqua 3-D products"). Such items infringe one or more claims of the '440 Patent.

32.     Upon information and belief, Aqua Leisure manufactures, uses, offers to sell, and/or sells a variety of additional 3-D toys, including, but not limited to, "3D Viewers," "3D Soccerball," "3D Scatch," "3D Football," and "3D Bat & Ball Combo" under its "3-D Sports" product line (collectively, Aqua Leisure's "3-D Sports products"). Such items were disclosed to Aqua Leisure by Wide Eyes during the negotiations between the two companies, as described above.

33.     Upon information and belief, all of Aqua Leisure's Aqua 3-D products and 3-D Sports products are advertised on their packaging as requiring the "Aqua 3-D" goggles and/or "3D Viewers" for 3-D viewing.

34. Wide Eyes first discovered Aqua Leisure's Aqua 3-D products and 3-D Sports products being sold on the shelves of a Toys "R" Us retail store location in Los Angeles, California in or around January 2011.

35. Upon information and belief, Aqua Leisure's Aqua 3-D products and 3-D Sports products are virtually identical to the products and product concepts presented to Aqua Leisure by Wide Eyes, as described above. In substance, Aqua Leisure's Aqua 3-D products and 3-D Sports products are either exact replicas of Wide Eyes' technologies or colorable imitations of the line of products and product concepts disclosed by Wide Eyes during the parties' earlier discussions and negotiations. As described in Claim 1 of the '440 Patent, all of Aqua Leisure's Aqua 3-D products require use of filtering spectacles having first and second lenses and involve a stereoscopic image system and a pool of water.

36. Upon information and belief, Aqua Leisure offers to sell and/or sells the Aqua 3-D products and 3-D Sports products to numerous retailers, including Toys "R" Us.

37. Upon information and belief, Toys "R" Us uses, offers to sell, and/or sells Aqua Leisure's Aqua 3-D products and 3-D Sports products in its retail stores and online at www.toysrus.com.

38. Aqua Leisure's and Toys "R" Us' activities have been without express or implied license from Wide Eyes. Wide Eyes have never authorized Aqua Leisure and/or Toys "R" Us to manufacture, use, offer for sale, and/or sell any of the Aqua 3-D products or 3-D Sports products, nor any other 3-D products conceived and developed by Wide Eyes and/or covered by the '440 Patent.

39. On February 10, 2011, Wide Eyes' attorney sent a demand letter to Toys "R" Us, notifying it that its use, offers for sale, and/or sale of Aqua Leisure's Aqua 3-D products

infringed Wide Eyes' patent rights. Wide Eyes demanded that Toys "R" Us stop all infringing activities. Since at least as early as this date, Aqua Leisure and Toys "R" Us have had actual knowledge of Wide Eyes' rights in the '440 Patent and/or patent infringement claims concerning Aqua Leisure's and Toys "R" Us' manufacture, use, offers for sale, and/or sales of the Aqua 3-D products.

40.     Upon information and belief, Aqua Leisure and Toys "R" Us continue to engage in the infringing conduct described above.

## COUNT I
### Infringement of the '440 Patent
### (Against All Defendants)

41.     Wide Eyes realleges and incorporates by reference paragraphs 1-40 above as though fully set out herein.

42.     Aqua Leisure and Toys "R" Us have infringed and are continuing to infringe the '440 Patent by engaging in acts including making, using, selling, and/or offering to sell within the United States, or importing into the United States, products that embody the patented invention described and claimed in the '440 Patent, including the Aqua 3-D products described herein.

43.     Furthermore, Aqua Leisure and Toys "R" Us have induced infringement of the '440 Patent and/or committed acts of contributory infringement of the '440 Patent.

44.     Aqua Leisure and Toys "R" Us have profited and continue to profit from their manufacture, use, offers to sell, and/or sale of the infringing articles.

45.     Aqua Leisure's and Toys "R" Us' activities have been without express or implied license from Wide Eyes.

46.     Aqua Leisure and Toys "R" Us will continue to infringe the '440 Patent unless enjoined by this Court.

47. As a result of Aqua Leisure's and Toys "R" Us' infringing conduct, Wide Eyes has suffered, and will continue to suffer, irreparable harm for which there is no adequate remedy at law. Wide Eyes is entitled to preliminary and permanent injunctive relief against such infringement under 35 U.S.C. § 283.

48. As a result of Aqua Leisure's and Toys "R" Us' infringement of the '440 Patent, Wide Eyes has been damaged, and will be further damaged, and is entitled to be compensated for such damages, under 35 U.S.C. § 284, in an amount to be determined at trial.

49. Aqua Leisure's and Toys "R" Us' past and continuing infringement of the '440 Patent has been deliberate and willful.

50. Aqua Leisure's and Toys "R" Us' conduct warrants an award of treble damages, pursuant to 35 U.S.C. § 284, and this is an exceptional case justifying the award of attorneys' fees to Wide Eyes, pursuant to 35 U.S.C. § 285.

## COUNT II
### Tortious Interference with Contractual and Business Relationships
### (Against Aqua Leisure)

51. Wide Eyes realleges and incorporates by reference paragraphs 1-50 above as though fully set out herein.

52. Wide Eyes had contracts and/or advantageous business relations with Toys "R" Us. Wide Eyes' contracts and/or advantageous business relations with Toys "R" Us preceded any involvement among Wide Eyes, Mr. Fortier, and Aqua Leisure concerning Wide Eye's 3-D products and 3-D Sports products. For example, Mr. Sgromo has had business dealings with Toys "R" Us since as early as 2000. Wide Eyes also spoke with Mr. Arnold, Toys "R" Us' Seasonal Buyer, at the New York Toy Fair in or around February 2010, during which time Wide Eyes stated that it wanted to discuss Wide Eyes' 3-D items and water slides. Toys "R" Us' Seasonable Buyer agreed to meet with Wide Eyes to discuss those products.

53. Mr. Fortier and/or Aqua Leisure knew that Wide Eyes has contractual and/or advantageous business relations with Toys "R" Us.

54. Aqua Leisure successfully pursued a business relationship with Toys "R" Us whereby Toys "R" Us would carry and sell the infringing Aqua 3-D products and 3-D Sports products. Such a relationship was, and continues to be, to the exclusion of Wide Eyes.

55. By virtue of the conduct described above, Aqua Leisure has interfered with Wide Eyes' contracts and/or advantageous business relations with Toys "R" Us.

56. Such interference by Aqua Leisure was conducted by improper means, including without limitation cutting Wide Eyes out of any advantageous business relationship with Toys "R" Us for Aqua Leisure's own benefit in violation of the Idea Submission Agreement and Aqua Leisure's obligation therein to contract with Wide Eyes in order to market Wide Eyes' 3-D technologies, and for an improper purpose. Such interference was intentional, malicious, and without legal justification.

57. As a direct and proximate result of Aqua Leisure's conduct, Wide Eyes has suffered and continues to suffer substantial and irreparable harm.

## COUNT III
### Breach of Contract
### (Against Aqua Leisure)

58. Wide Eyes realleges and incorporates by reference paragraphs 1-57 above as though fully set out herein.

59. Wide Eyes and Aqua Leisure are parties to an enforceable contract in the form of the April 9, 2010 Idea Submission Agreement.

60. By reason of the foregoing, Aqua Leisure has breached the April 9, 2010 Idea Submission Agreement.

61. Such conduct by Aqua Leisure has caused and will continue to cause damage to Wide Eyes.

## COUNT IV
### Unfair Methods of Competition and Deceptive Practices Under M.G.L. c. 93A
### (Against Aqua Leisure)

62. Wide Eyes realleges and incorporates by reference paragraphs 1-61 above as though fully set out herein.

63. Wide Eyes and Aqua Leisure are engaged in interstate trade or commerce in the Commonwealth of Massachusetts.

64. Aqua Leisure's unfair and deceptive conduct occurred, and is occurring, primarily and substantially in the Commonwealth of Massachusetts.

65. Aqua Leisure's conduct as described above has been willful, wanton, reckless, unethical, and in total disregard of Wide Eyes' rights.

66. By reason of the foregoing, Aqua Leisure has engaged in unfair and deceptive trade practices in violation of M.G.L. c. 93A.

67. Such conduct by Aqua Leisure has caused and will continue to cause irreparable injury to Wide Eyes, for which Wide Eyes has no adequate remedy at law.

## JURY TRIAL DEMAND

68. Wide Eyes demands a trial by Jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Wide Eyes respectfully asks this Court to enter judgment for Wide Eyes and against Aqua Leisure and Toys "R" Us on all Counts, and to grant Wide Eyes the following relief:

A. Judgment that Aqua Leisure and Toys "R" Us have infringed the '440 Patent;

B. A Judgment and Order preliminarily and permanently restraining and enjoining Aqua Leisure and Toys "R" Us and their directors, officers, employees, servants, agents, affiliates, subsidiaries, others controlled by them, and all persons in active concert or participation with any of them from further infringing the '440 Patent;

C. A Judgment and Order requiring Aqua Leisure and Toys "R" Us to pay damages to Wide Eyes to compensate it for Aqua Leisure's and Toys "R" Us' infringing acts, in accordance with 35 U.S.C. § 284;

D. A Judgment and Order requiring Aqua Leisure and Toys "R" Us to pay increased damages up to three times, in view of Aqua Leisure's and Toys "R" Us' willful and deliberate infringement of the '440 Patent;

E. A finding in favor of Wide Eyes that this is an exceptional case, under 35 U.S.C. § 285, and an award to Wide Eyes of its costs, including reasonable attorneys' fees and other expenses incurred in connection with this action;

F. A Judgment and Order requiring Aqua Leisure and Toys "R" Us to pay Wide Eyes pre-judgment interest under 35 U.S.C. § 284, and post-judgment interest under 38 U.S.C. § 1961, on all damages awarded;

G. Order that Aqua Leisure and Toys "R" Us recall any and all existing Aqua Leisure products that infringe the '440 Patent;

H. A Judgment that Aqua Leisure has tortiously interfered with Wide Eyes' contractual and business relationships with Toys "R" Us;

I. A Judgment that Aqua Leisure has breached the parties' Idea Submission Agreement;

J.  A Judgment that Aqua Leisure has engaged in unfair methods of competition and deceptive practices under M.G.L. c. 93A;

K.  Order Aqua Leisure and Toys "R" Us to pay monetary damages in an amount to be determined at trial;

L.  Multiply the amount of damages awarded to Wide Eyes as permitted by law;

M.  Order that Aqua Leisure and Toys "R" Us compensate Wide Eyes for the costs of this action and Wide Eyes' reasonable attorney's fees; and

N.  Such other, further, different, or additional relief as this Court deems just and proper.

Respectfully submitted,

WIDE EYES MARKETING LTD.
By its Attorneys,


/s/ Lee Carl Bromberg
Lee Carl Bromberg (BBO # 058480)
Email: lbromberg@mccarter.com
Bonnie A. Vanzler (BBO # 672515)
Email: bvanzler@mccarter.com
McCARTER & ENGLISH, LLP
265 Franklin Street
Boston, Massachusetts  02110
Tel: (617) 449-6500
Fax: (617) 607-9200

Dated: June 8, 2011